**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JAIME PIERO COLE, | § | |
| | § | |
| Petitioner | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-940 |
| | § | |
| LORIE DAVIS, | § | **THIS IS A CAPITAL CASE** |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

_____

**REPLY TO RESPONDENT'S OPPOSITION**
**TO MOTION FOR DISCOVERY**

SHAWN NOLAN
Federal Community Defender Office for
    the Eastern District of Pennsylvania
Capital Habeas Unit
Curtis Center, Suite 545 West
601 Walnut Street
Philadelphia, PA  19106
215-928-0520
shawn_nolan@fd.org

Dated:  July 14, 2021

# TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................. ii

I.      INTRODUCTION ........................................................................................... 1

II.     THE COURT SHOULD GRANT DISCOVERY BECAUSE FACTUAL
DEVELOPMENT MAY ESTABLISH CAUSE AND PREJUDICE FOR ANY
DEFAULT AND MAY DEMONSTRATE THAT PETITIONER IS ENTITLED
TO RELIEF ON THE MERITS. ...................................................................... 2

     A.     Petitioner Should Be Granted Discovery on Claim III. ........................... 2

     B.     Respondent Represents the State of Texas. .............................................. 6

     C.     Petitioner Should Be Granted Discovery on Claim V. ............................. 7

     D.     Petitioner Should be Granted Discovery on Claim XIV ......................... 10

          1.     The default ruling is not adequate to bar habeas review ............... 11

          2.     There is good cause for the requested discovery. .......................... 11

III.    SECTION 2254(E)(2) DOES NOT BAR DISCOVERY. ................................ 15

CONCLUSION ......................................................................................................... 17

## TABLE OF CITATIONS

**Federal Cases**

*Ayestas v. Davis*, 138 S. Ct. 1080 (2018) ............................................................ 14

*Bracy v. Gramley*, 520 U.S. 899 (1997) ............................................................ 1, 6

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................ 14

*Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979) ............................................. 7

*Caro v. Calderon*, 165 F.3d 1223 (9th Cir. 1999) ............................................. 4

*Chavez v. Ill. State Police*, 251 F.3d 612 (7th Cir. 2001) ................................. 12

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ....................................................... 7

*Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) ............................................ 2, 16

*Fierro v. Johnson*, 197 F.3d 147 (5th Cir. 1999) ............................................ 6, 7

*Foster v. Schomig*, 223 F.3d 626 (7th Cir. 2000) ........................................... 3

*Harris v. Nelson*, 394 U.S. 286 (1969) ............................................................. 6

*Holloway v. Horn*, 161 F. Supp. 2d 452 & n.49 (E.D. Pa. 2001) .................... 1

*Holloway v. Horn*, 355 F.3d 707 (3d Cir. 2004) ........................................... 1, 16

*Jefferson v. Upton*, 560 U.S. 284 (2010) .......................................................... 3

*Kyles v. Whitley*, 514 U.S. 419 (1995) ............................................................ 14

*Lee v. Kemna*, 534 U.S. 362 (2002) ................................................................ 11

*Martinez v. Dretke*, 404 F.3d 878 (5th Cir. 2005) ........................................... 3

*Martinez v. Ryan*, 566 U.S. 1 (2012) ........................................................ 2, 4, 16

*Porter v. McCollum*, 558 U.S. 30 (2009) ....................................................... 2, 3

*Rompilla v. Beard*, 545 U.S. 374 (2005) ........................................................ 4, 5

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ............................................. 6

*Sasser v. Hobbs*, 735 F.3d 833 (8th Cir. 2013) .............................................. 16

*Scott v. Hubert*, 610 F. App'x 433 (5th Cir. 2015) ......................................... 8

*Sears v. Upton*, 561 U.S. 945 (2010) ............................................................... 3

*Shinn v. Ramirez*, No. 20-1009, 2021 WL 1951793 (U.S. May 17, 2021) ...... 2

*Strickland v. Washington*, 466 U.S. 668 (1984) ) ............................................ 4

*United States v. Armstrong*, 517 U.S. 456 (1996) .............................. 11, 12, 13

*United States v. Bagley*, 473 U.S. 667 (1985) ............................................... 14

*United States v. Bass*, 536 U.S. 862 (2002) (per curiam) ............................. 11

*United States v. Gilbert*, 75 F. Supp. 2d 12 (D. Mass. 1999) ....................... 14

*United States v. James*, 257 F.3d 1173 (10th Cir. 2001) .............................. 11

*United States v. Tuitt*, 68 F. Supp. 2d 4, 6-9 (D. Mass. 1999) ..................... 13

*United States v. Wayte*, 470 U.S. 598 (1985) ............................................................. 14

*Washington v. Davis*, 715 F. App'x 380 (5th Cir. 2017) ......................................... 8, 9

*Wiggins v. Smith*, 539 U.S. 510 (2003) ................................................................ 4

*Williams v. Stephens*, 575 F. App'x 380 (5th Cir. 2014) ..................................... 3

*Williams v. Taylor*, 529 U.S. 420 (2000) ............................................................ 15

**Federal Statutes**

28 U.S.C. § 2254 .............................................................................................. *passim*

**Other**

Amer. Bar Ass'n, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, Guideline 10.15.1.C, D.4, 31 Hofstra L. Rev. 913 (2003) ..................................... 5

Rule 6, Rules Governing § 2254 Proceedings in the United State District Courts ....................... 1

## I.    INTRODUCTION

The bulk of Respondent's response in opposition to Petitioner's request for leave to conduct discovery consists of assertions that Respondent has defenses to Petitioner's claims on the merits, and therefore the Court should deny discovery. *See* Resp't's Opp., DE-73 at 3-24. These arguments misconstrue the role of discovery in habeas proceedings and the legal standards governing such discovery.

The "good cause" requirement of Rule 6 of the Rules Governing § 2254 Proceedings does not mean that a federal habeas court should grant discovery only in cases where the petitioner has already shown an entitlement or likely entitlement to relief. To the contrary, discovery should be granted when "specific allegations before the court show *reason to believe* that the petitioner *may, if the facts are fully developed*, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (emphasis supplied) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Thus, the reviewing court must address not whether the petitioner is entitled to relief on the current state of the record, but whether there is "reason to believe" that the petitioner may, through discovery, demonstrate an entitlement to relief after the facts are fully developed. And discovery is available not just as to the substantive merits of a claim, but also as to whether there is cause and prejudice to overcome a default. *Holloway v. Horn*, 161 F. Supp. 2d 452, 509-10 & n.49 (E.D. Pa. 2001), *rev'd on other grounds*, 355 F.3d 707 (3d Cir. 2004) (discussing grant of discovery related to cause for default).[1] This principle applies equally where the petitioner seeks

---

[1] Respondent points out that this Court previously wrote that there is no good cause for discovery if a procedural default precludes consideration of the merits of the claim. Order, DE-29 at 8. Respondent omits that this Court went on to acknowledge that it could reach the merits of such a claim "if Cole can show cause for the default and that actual prejudice has resulted." *Id.* at 9.

to establish cause under *Martinez v. Ryan*, 566 U.S. 1 (2012). *See Detrich v. Ryan*, 740 F.3d

1237, 1246-47 (9th Cir. 2013) (discovery appropriate because such claims "often require[]

factual development in a collateral proceeding").[2]

In light of these well-established principles regarding discovery in habeas proceedings,

Respondent's specific arguments in opposition to the discovery requests are without merit, as

shown below.

## II.   THE COURT SHOULD GRANT DISCOVERY BECAUSE FACTUAL DEVELOPMENT MAY ESTABLISH CAUSE AND PREJUDICE FOR ANY DEFAULT AND MAY DEMONSTRATE THAT PETITIONER IS ENTITLED TO RELIEF ON THE MERITS.

### A.   Petitioner Should Be Granted Discovery on Claim III.

Respondent points out that the Texas Court of Criminal Appeals ("CCA") denied Claim

III on procedural grounds. Resp't's Opp., DE-73 at 4. Petitioner does not dispute this, *see*

Consol. & Am. Pet., DE-58 at 72 n.18, but argues that he can overcome any default, in part

under *Martinez*, *see id.* at 81-85. Largely ignoring the substance of Petitioner's request for

discovery, Respondent concentrates on arguing that Petitioner is not entitled to relief on Claim

III on various grounds: (1) that the aggravating circumstances are strong; (2) that brain damage

mitigating evidence is double-edged; and (3) that post-conviction counsel's performance was not

deficient. Resp't's Opp., DE-73 at 7-12.

Arguments (1) and (2) ignore precedent from the Supreme Court holding to the contrary.

Evidence of a defendant's brain damage—particularly where organic or beyond the defendant's

control—is itself mitigating. *See* MSJ Reply, DE-82, § III.C.2 (citing *Porter v. McCollum*, 558

---

[2] As discussed in Pet'r's Mot. for Stay, DE-77, the Supreme Court's forthcoming decision in *Shinn v. Ramirez*, No. 20-1009, 2021 WL 1951793, at *1 (U.S. May 17, 2021) (granting petition for writ of certiorari), may provide further guidance on these questions.

2

U.S. 30, 36, 41 (2009); *Sears v. Upton*, 561 U.S. 945, 946 (2010); *Jefferson v. Upton*, 560 U.S. 284, 285-86 (2010)).[3]

Moreover, the Supreme Court has recognized that counsel's failure to present compelling mitigation evidence can be prejudicial, even in highly aggravated cases (and even under the deferential standard for claims of ineffective assistance of counsel). *See* MSJ Reply, DE-82, § III.C.1 (collecting cases). A death verdict is not a foregone conclusion even for defendants and crimes arguably on the more aggravated end of the spectrum—particularly given there was a holdout juror in Mr. Cole's case. *See* Consol. & Am. Pet., DE-58 at 140-141.

Arguments (1) and (2) also fail because they ignore both Petitioner's proffer that his brain damage will *not* make him more dangerous in prison, *see* MSJ Reply, DE-82, § III.C.2, and the potential effect of the requested discovery. Petitioner has proffered expert reports opining that Mr. Cole was exposed to damaging neurotoxins during his childhood in Ecuador as the result of oil development and drilling in the area, *see* Consol. & Am. Pet., DE-58 at 85-88 (citing Report of Andrés Lugo, M.D., DE-30-1 at 91-107, and that he suffers from brain damage as a result, *see* Consol. & Am. Pet., DE-58 at 89 (citing report of Daniel Martell, Ph.D., DE 30-1 at 56-67). Petitioner seeks discovery to develop additional evidence concerning his exposure to neurotoxins as a child. *See* Mot. for Disc., DE-71 at 6-8. More evidence of such exposure would strengthen

---

[3] Moreover, the decisions cited by Respondent, *see* Resp't's Opp., DE-73 at 7-8, are inapposite. *See Williams v. Stephens*, 575 F. App'x 380, 387-88 (5th Cir. 2014) (expressing skepticism about mitigating value of evidence of impairment resulting from defendant's drug abuse); *Martinez v. Dretke*, 404 F.3d 878, 890 (5th Cir. 2005) (applying § 2254(d)(1), state court decision that counsel made reasonable strategic decision not to present questionable evidence of neurological impairment was not unreasonable); *Foster v. Schomig*, 223 F.3d 626, 637 (7th Cir. 2000) (after holding counsel's performance not deficient, court accepts as not unreasonable a state court ruling that mental health mitigation would not likely have made a difference to sentencing judge). None of these decisions involves a *de novo* ruling that brain damage evidence is per se double-edged and therefore would not establish prejudice—a ruling that would be contrary to *Porter*, *Sears*, and *Jefferson*.

the link between the exposure and Mr. Cole's cognitive impairments; such a link is strongly mitigating. *See, e.g.*, *Caro v. Calderon*, 165 F.3d 1223, 1226-27 (9th Cir. 1999) (evidentiary hearing necessary to evaluate ineffective assistance claim for failure to present evidence of exposure to neurotoxins leading to brain damage).

As to point (3), Respondent first argues that, because state habeas counsel did some investigation and raised some claims, their failure to investigate Mr. Cole's exposure to neurotoxins is an unchallengeable strategic decision. *See* Resp't's Opp., DE-73 at 8-10. In addition to being purely an argument about the merits of the underlying claim rather than about discovery, this argument is flatly contrary to *Strickland v. Washington*, 466 U.S. 668 (1984), itself, and *Wiggins v. Smith*, 539 U.S. 510 (2003).[4]

Respondent argues that decisions made by post-conviction counsel after conducting "some cursory investigation" are "'virtually unchallengeable.'" Resp't's Opp., DE-73 at 9 (quoting *Strickland*, 466 U.S. at 690). That is *not*, however, what *Strickland* says. What *Strickland* actually says is that counsel's "choices made after *thorough investigation* of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690 (emphasis supplied). *Wiggins* amplifies this point, making clear that the proper focus in an ineffective assistance claim is on "whether the investigation supporting counsel's decision . . . *was itself reasonable*." 539 U.S. at 523; *see also Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (granting relief on ineffectiveness claim although it was "not a case in which defense counsel simply ignored their obligation to find mitigating evidence"). Respondent cannot defeat an

---

[4] Under *Martinez*, the effectiveness of post-conviction counsel is judged "by the standards of *Strickland*." 566 U.S. at 14. Decisions like *Wiggins*, which are governed by *Strickland*, make "no new law." *Wiggins*, 539 U.S. at 522.

ineffectiveness claim (whether under *Strickland* or *Martinez*) by writing out counsel's obligation to conduct a reasonable, thorough (not "some cursory") investigation.[5]

Respondent also argues that state habeas counsel were not ineffective because they relied on the expert they had hired. Resp't's Opp., DE-73 at 9-10. This argument ignores numerous facts alleged in the Consolidated and Amended Petition. First, the state habeas mitigation specialist raised with counsel the issue of exposure to neurotoxins, but counsel took no action on it. Consol. & Am. Pet., DE-58 at 91 (citing DE-30-1 at 123-24). That was deficient performance.[6] Second, state habeas counsel used an expert they knew to be inferior because of an inaccurate belief they could not obtain funding to hire a different expert. *Id.* at 92-93 (citing DE-30-1 at 145-46). That was deficient performance. *See id.* (citing *Hinton v. Alabama*, 571 U.S. 263, 274 (2014)). Third, state habeas counsel dropped the issue of brain damage and exposure to neurotoxins the moment they got a less than helpful report from the known-to-be inferior expert, without even asking the expert a single question. *Id.* at 92 (citing DE-30-1 at 127-28). Counsel had a duty to conduct a reasonable investigation, including at a minimum talking to their expert about the reasons for his findings and reviewing his work. *See Rompilla*, 545 U.S. at 383-84 (counsel's performance deficient, although arguably they had little reason to investigate further, where counsel failed to review documents that were "readily available for the asking").

---

[5] Respondent also relies on an inapt and unsupported analogy between the duties of appellate counsel and those of capital post-conviction counsel. *See* Resp't's Opp., DE-73 at 10. The norms governing capital post-conviction counsel include casting a wide investigative net and raising all potentially meritorious claims. *See, e.g.*, Amer. Bar Ass'n, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, Guideline 10.15.1.C, D.4, 31 Hofstra L. Rev. 913, 1079-80 (2003) ("Post-conviction counsel should seek to litigate all issues . . . that are arguably meritorious"; counsel "should continue an aggressive investigation of all aspects of the case.").

[6] Professionally reasonable counsel would have known that exposure to neurotoxins can cause brain impairment and would have investigated and provided evidence of such exposure to their expert. *See* Consol. & Am. Pet., DE-58 at 93-94.

Claim III of the Consolidated and Amended Petition states a claim on which relief could be granted. There is "reason to believe" that Petitioner "may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Harris*, 396 U.S. at 299. Therefore, there is good cause for the requested discovery. *Bracy*, 520 U.S. at 908-09.

## B.     Respondent Represents the State of Texas.

Respondent argues that Mr. Cole must seek third party discovery and obtain subpoenas for any and all discovery relating to the prosecutor's files. *See* Resp't's Opp., DE-73 at 14-15. Respondent contends that Mr. Cole's discovery requests relating to records in the prosecution's file are actually third party requests because the Attorney General represents only the Director of the Texas Department of Criminal Justice, and neither the Director nor her attorneys possess the requested documents. *Id.*

This argument fails. In an action arising under 28 U.S.C. § 2254, "the real party in interest is the state of Texas." *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004). Because the Attorney General represents the state of Texas, and not simply the Director in her official capacity, "Texas law does not permit the District Attorney to assume representation of the State as well." *Id.* at 552. If this Court required Mr. Cole to seek subpoenas to obtain discovery from the District Attorney, that would mean that every petitioner seeking discovery under § 2254 would have to obtain subpoenas for discovery from the prosecuting attorney. "This outcome would be contrary to state law, which has chosen the Attorney General, rather than the various district attorneys, to represent the State in federal habeas corpus suits." *Id.* at 553.

In support of its argument, Respondent cites *Fierro v. Johnson*, 197 F.3d 147, 155-56 (5th Cir. 1999). Resp't's Opp., DE-73 at 14. *Fierro*, however, is inapposite. In *Fierro*, the court declined to impute a prosecuting attorney's knowledge of false testimony to the state's attorneys

in a federal habeas proceeding. *Id.* That decision does nothing to absolve Respondent from its responsibility to produce the prosecution's files to Mr. Cole, if ordered to do so by this Court.

If this Court accepts Respondent's argument, which it should not, then it should authorize Mr. Cole to file and serve the Harris County District Attorney's Office, and other relevant agencies, subpoenas or motions to compel production of those materials. Respondent agrees that issuance of subpoenas would be appropriate. Resp't's Opp., DE-73 at 15. Because Respondent has disclaimed any control over, or access to, the requested materials, *id.*, it does not have any cognizable interest in the materials and therefore lacks standing to object to their production. *E.g.*, *Brown v. Braddick*, 595 F.3d 961, 967 (5th Cir. 1979) (finding that an entity that is not the subject of a subpoena generally does not have standing to oppose a subpoena since the entity is "not in possession of the materials subpoenaed").

## C.     Petitioner Should Be Granted Discovery on Claim V.

Mr. Cole alleges that trial counsel ineffectively failed to object to the state's discriminatory use of peremptory challenges on the basis of race.  *See* Consol. & Am. Pet., DE-58, Claim V. He requests the prosecutors' jury selection notes, including the prosecutors' juror cards and questionnaires from trial. DE-71 at 8-9.

Respondent argues that such discovery is barred by *Cullen v. Pinholster*, 563 U.S. 170, 181, 185 (2011). Resp't's Opp., DE-73 at 15-16; *see also* DE-23 at 8-9. Petitioner previously argued that *Pinholster* should not be read as precluding discovery. *See* DE-28 at 2-7.[7] This Court indicated, however, that for claims to which § 2254(d) applies, discovery should only be permitted after a petitioner has shown the ability to overcome § 2254(d). DE-29 at 7. As shown in Petitioner's Consolidated and Amended Petition and reply to Respondent's motion for

---

[7] Petitioner does not repeat those arguments here but does not waive them.

summary judgment, *see* MSJ Reply, DE-82, § V,[8] Petitioner overcomes § 2254(d) with respect to Claim V. Accordingly, *Pinholster* does not preclude discovery.

Respondent argues that trial counsel would not have had access to the prosecutor's notes during trial, and therefore such information could not be considered in evaluating counsel's deficient performance and is thus not relevant to Mr. Cole's ineffectiveness claim. Resp't's Opp., DE-73 at 16-17. Respondent errs.

While Mr. Cole maintains that *Strickland* prejudice should be presumed upon a showing of counsel's deficient performance in failing to raise a *Batson* objection, Consol. & Am. Pet., DE-58 at 121-22, were it not to be presumed, such an analysis would involve an inquiry into the underlying merits of Mr. Cole's *Batson* claim to determine whether the *Batson* challenge would have been successful.  *See Scott v. Hubert*, 610 F. App'x 433, 435 (5th Cir. 2015). As the Fifth Circuit has held, "the presence of race-identifying marks on the prosecutor's jury questionnaires is evidence of a *Batson* violation—as both the Supreme Court, *Foster v. Chatman*, ⸺ U.S. ⸺ –, 136 S. Ct. 1737, 195 L. Ed. 2d 1 (2016), and the TCCA, *Whitsey* [*v. State*], 796 S.W.2d 707 [(Tex. Ct. Crim. App. 1989)], have found." *Washington v. Davis*, 715 F. App'x 380, 384 (5th Cir. 2017), *as revised* (Feb. 20, 2018) (per curiam).

Importantly, like Mr. Cole, the petitioner in *Washington* claimed that trial counsel was ineffective for failing to raise a timely *Batson* claim. *Id*. at 381-82 ("The IATC-*Batson* claim was supported by the discovery of the prosecutor's jury questionnaires from the trial, which appeared to be racially coded."). As *Washington* makes clear, the information Mr. Cole requests

---

[8] Respondent does not address Petitioner's arguments regarding the unreasonableness of the state court's findings, *see* Consol. & Am. Pet., DE-58 at 122-27.

is not only relevant to, but can be evidence of, trial counsel's ineffectiveness in failing to make a *Batson* challenge.

Respondent next argues that this Court should deny discovery because it believes Mr. Cole fails to prove counsel's deficient performance. Resp't's Opp., DE-73 at 17-18. In an attempt to show counsel's performance was not deficient, Respondent provides what is admittedly a "very generalized description of voir dire," *id.* at 18, primarily focusing on the number of days of voir dire before the first challenged peremptory strike and the State's acceptance of other racial-minority jurors. These factors, however, are not dispositive of counsel's deficient performance. Respondent argues that deference is owed to the state court decisions, Resp't's Opp., DE-73 at 18-19, but does not address the inadequacies of the state court process, which did not resolve whether counsel understood the law regarding *Batson* violations or whether counsel had reviewed and compared the voir dire testimony and juror questionnaires in question before arriving at the belief that there was no violation. *See* Consol. & Am. Pet., DE-58 at 123.

Lastly, Respondent faults Mr. Cole for offering "no evidence that prosecutors even took notes during voir dire," and suggests that the absence of any mention of the review of notes in the prosecutors' affidavits supports the conclusion that "Cole's request is for something he does not prove exists." Resp't's Opp., DE-73 at 18-19. Yet in the same paragraph, Respondent concedes that the prosecutors' affidavits plainly state that they reviewed "relevant juror questionnaires," *id.*, which is precisely what Mr. Cole has requested. The questionnaires undoubtedly exist, based on the prosecutors' own sworn affidavits as well as the recently disclosed privilege log from the Harris County District Attorney's Office, which includes "Voir Dire Jury Questionnaires" and "Pre-Trial and Trial Notes for Cause No. 1250754 ("112

9

handwritten pages" and "8 typed pages") on the list of materials withheld from the disclosure. *See* DE 28-1 (Privilege Log).

Moreover, statements made during voir dire corroborate Mr. Cole's contention that the prosecutors took notes – either on the juror questionnaires, on juror cards, and/or on separate pages – during voir dire and/or in preparation for voir dire. *See, e.g.*, DE 6-77 at 141 (prosecutor Mitchell noting during voir dire that she "did write down that on Issue No. 1 he would do an automatic 'yes,' but then he kind of – "); DE 6-81 at 91 (venireperson asking during voir dire, "Why is [my juror questionnaire] free to everybody to see and write notes on, especially the defendant?"); DE 6-78 at 205 (prosecutor Tise stating during voir dire, "I noted on your questionnaire that you indicated that you think sometimes police officers shade the truth."); DE 6-79 at 45 (prosecutor Tise stating during voir dire, "I also noted on your questionnaire at one point you said that a defendant in a criminal case should be required to present some evidence to prove his innocence."); DE 6-84 at 80 (same); DE 6-80 at 61(prosecutor Tise stating "I did note that you have two young children.").

Mr. Cole has made specific allegations that support his tailored request for the prosecutors' voir dire notes, including their copies of the juror questionnaires and cards, which are relevant to the ineffectiveness of counsel claim he alleges. This Court should grant the requested discovery.

    **D.**    **Petitioner Should be Granted Discovery on Claim XIV.**

Mr. Cole alleges that his death sentence is unconstitutional because Texas and Harris County have arbitrarily administered the death penalty, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. *See* Consol. & Am. Pet., DE-58, § XIV.

Respondent argues the discovery request should be denied because (1) Petitioner cannot overcome a procedural default of this claim, and therefore is not entitled to discovery, and (2) the requested discovery amounts to a "fishing expedition." Resp't's Opp., DE-73 at 19-23. Both of Respondent's arguments are without merit.

### 1.    The default ruling is not adequate to bar habeas review.

State court procedural rulings bar habeas review only if they are adequate and independent. The question whether a state procedural ruling is adequate is itself a question of federal law. *Lee v. Kemna*, 534 U.S. 362, 375 (2002). The Court has framed the adequacy inquiry by asking whether the state rule in question was "'firmly established and regularly followed.'" *Id.* at 376 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).

As shown in the Consolidated and Amended Petition, *id.* at 173-74, and in Petitioner's reply to the summary judgment motion, MSJ Reply, DE-82, § XIV, the state court default ruling is not adequate to bar habeas review.

### 2.    There is good cause for the requested discovery.

Mr. Cole has demonstrated "some evidence" of discriminatory effect and discriminatory intent, which is all that is required to support his discovery request. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996); *see also United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam). Contrary to Respondent's assertions, *see* Resp't's Opp., DE-73 at 21-22, Mr. Cole "need not establish a prima facie case of selective prosecution to obtain discovery on these issues." *United States v. James*, 257 F.3d 1173, 1178 (10th Cir. 2001). Instead, Mr. Cole need only offer "some evidence" of discriminatory intent and effect, which he has done. *See Armstrong*, 517 U.S. at 463.

Respondent argues that Mr. Cole has failed to prove discriminatory effect. *See* Resp't's Opp., DE-73 at 21-22. On the contrary, Mr. Cole has demonstrated that similarly situated

11

individuals of a different race have been treated differently in capital murder prosecutions in

Harris County. Mr. Cole provided Texas Department of Criminal Justice data demonstrating that

between 2004 and 2019, no white defendants from Harris County were sentenced to death. [9]

From 2007 through 2017, fourteen defendants from Harris County were sentenced to death.

None of these death-sentenced defendants were white. All of these defendants were black or

Hispanic. The complete absence of white death-sentenced defendants in Harris County in the

fifteen years between 2004 and 2019 signals discriminatory effect.

Respondent claims that statistics are "all that Cole offers." *See* Resp't's Opp., DE-73 at

22. Statistical data has proven a useful tool to determine prima facie cases of discriminatory

effect. And while statistics alone rarely establish an equal protection violation, courts have held

that statistics may be sufficient to establish the discriminatory effect prong of the *Armstrong* test.

*See, e.g.*, *Chavez v. Ill. State Police*, 251 F.3d 612, 640 (7th Cir. 2001) (statistics may be used to

show requisite discriminatory effect of state conduct).

Moreover, Mr. Cole has not relied on general statistics or controlled studies like those

rejected in *Armstrong*. He has offered particularized evidence that suggests similarly situated

white individuals were offered life sentences when he was not. *See* DE-71 at 10-11. He has cited

specific examples of individuals who were similarly situated and treated differently.

Although the Court recognized the burden this standard placed on defendants, it

explicitly noted that "[t]he similarly situated requirement does not make a selective-prosecution

claim impossible to prove." *Armstrong*, 517 U.S. at 466. The Court suggested that the defendants

"could have investigated whether similarly situated persons of other races were prosecuted by

---

[9] In October of 2019, a white defendant in Harris County was sentenced to death after being
convicted of six murders.

12

the State of California and were known to federal law enforcement officers, but were not prosecuted in federal court." *Id.* at 470.[10] Moreover, in federal criminal cases decided after *Armstrong*, courts have found "some evidence" of discriminatory effect *and* intent sufficient to satisfy the discovery standard. *See United States v. Tuitt*, 68 F. Supp. 2d 4, 6-9 (D. Mass. 1999) (where a black defendant was federally prosecuted for crack cocaine charges, evidence that no whites were prosecuted for crack cocaine charges in four federal courts constituted sufficient evidence of discriminatory effect and discriminatory intent for purpose of obtaining discovery). This is precisely what Mr. Cole has offered this Court.

Mr. Cole presented evidence that at least two similarly situated white defendants were charged with capital murder, but given opportunities to plead to a life sentence. *See* DE-71 at 10-11. Respondent suggests that Mr. Cole has "boiled these cases down to 'family violence' murders." Resp't's Opp., DE-73 at 22. This is untrue. Richard Glenn Harris and Michael McDougall were both prosecuted in the same year as Petitioner, were nearly the same age as Petitioner, and had multiple victims in domestic-related murders. Like Petitioner, Mr. Harris had prior offenses for domestic violence and purportedly confessed. Mr. McDougall committed the offense in front of his children, which is also alleged in Petitioner's case. Petitioner's evidence of similarly situated white defendants is not based on "highly generalized comparison[s]." *Id.* at 23.

---

[10] *See also Armstrong*, 517 U.S. at 476 (Breyer, J., concurring) ("Were the selective prosecution defense valid in this case—*i.e.*, were there clear evidence that the Federal Government's prosecutorial policy had a discriminatory effect and . . . was motivated by a discriminatory purpose, it should have been fairly easy for the defendants to find, not only instances in which the Federal Government prosecuted African-Americans, but also some instances in which the Federal Government did not prosecute similarly situated caucasians. The defendants' failure to do so, for the reasons the Court sets forth, amounts to a failure to make the necessary threshold showing in respect to materiality.") (internal quotations and citations omitted).

The only discernible difference in their circumstance is race, and this is evidence of discriminatory intent.

Respondent notes that Mr. Cole does not know the "strength of the evidence against the two white defendants, their roles in the offenses (e.g., whether there were co-defendants), the facts surrounding the offenses (e.g., whether they were premeditated)." *Id.* at 22. The answers to these questions are available through discovery.

Finally, Respondent claims that Mr. Cole has requested "seemingly every single document related to capital prosecutions by the Harris County District Attorney's Office." *Id.* at 21.[11] Evidence of discriminatory practices is difficult to uncover without discovery. *See United States v. Wayte*, 470 U.S. 598, 624 (1985) (Marshall J., dissenting) ("[M]ost of the relevant proof in selective prosecution cases will normally be in the Government's hands."). Mr. Cole's requests are reasonable and tailored to his specific allegations. Accordingly, the defense is entitled to the discovery being sought.[12]

---

[11] The Harris County District Attorney's Office's recent disclosure of its files did not include the "Capital Murder Summary" for Mr. Cole's case, as the office asserted work product privilege. *See* DE-28-1. That memo is one example of the type of documentation Petitioner seeks from his and others' cases. This type of documentation has already been shown to contain information that illuminates charging decisions. In *Ayestas v. Davis*, 138 S. Ct. 1080 (2018), the District Attorney's office had initially considered the defendant's immigration status as an aggravating factor. *See* Exhibit B, *Ayestas v. Davis*, No. 16-6795, Joint Appendix, Appendix H.

[12] If race was considered in making the decision to prosecute or recommend prosecution, the defense is entitled to know that in compliance with the prosecution's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). *See United States v. Gilbert*, 75 F. Supp. 2d 12, 15 (D. Mass. 1999). That principle alone supports an order requiring the production of the requested discovery. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *United States v. Bagley*, 473 U.S. 667, 676 (1985).

**III.     SECTION 2254(E)(2) DOES NOT BAR DISCOVERY.**

With respect to several of the requests, Respondent argues that this Court should deny

discovery because a hearing may be barred on some of Petitioner's claims under 28 U.S.C.

§ 2254(e)(2). *See* Resp't's Opp., DE-73 at 9 n.5, 21, 23-24. In support of this argument,

Respondent cites only a single decision from the Eleventh Circuit, which denied discovery and

an evidentiary hearing on a time-barred federal habeas petition. *Id.* at 24 (citing *Arthur v. Allen*,

452 F.3d 1234, 1248-49 (11th Cir. 2006)). Respondent's argument is without merit.

First, Respondent's argument misconstrues the purpose and timing of federal habeas

discovery. The purpose of habeas discovery is to make sure that the court and the parties have

available all facts relevant to the claims at issue. The possibility that Respondent may have a

defense to a particular use of the facts (e.g., a § 2254(e)(2) defense to a hearing) is not a basis for

denying discovery.

Second, Respondent's argument that prior counsel were not diligent is based on the

assertion that all state habeas counsel did to develop the facts was to request an evidentiary

hearing in the state habeas application and object to the lack of such a hearing. *Id.* at 24 n.11.

Respondent suggests that this is not enough, although the Supreme Court has explained that

diligence for purposes of § 2254(e)(2) usually requires "that the prisoner, at a minimum, request

an evidentiary hearing in the manner prescribed by state law." *Williams v. Taylor*, 529 U.S. 420,

437 (2000). But that is not all that state habeas counsel did. Rather, counsel repeatedly requested

factual development on all disputed issues of fact. *See* Response to State's Motion Requesting

Court to Order Trial Counsel to File Affidavits, DE-6-5 at 207-10; Motion to Vacate . . . Order

for Findings of Fact and Conclusions of Law . . . ., DE-6-6 at 2-11.  Thus, state habeas counsel

diligently sought factual development of the claims in the state habeas petition.

15

Third, to the extent that this Court should ultimately find state habeas counsel to have lacked diligence in any respect, Petitioner may still be able to demonstrate an entitlement to relief under *Martinez* and *Trevino*. *Martinez* and *Trevino* enable a habeas petitioner to overcome procedural defenses by showing that counsel in the initial collateral proceedings were ineffective under the standard of *Strickland*. *See Martinez*, 566 U.S. at 9. The reasoning of *Martinez* also allows a petitioner to develop in federal habeas court the factual basis for his ineffective assistance of trial counsel claim if the petitioner's failure to develop the facts in state court resulted from the inaction of collateral counsel who were ineffective under *Strickland*. *See Sasser v. Hobbs*, 735 F.3d 833, 853-54 (8th Cir. 2013) (where postconviction counsel's ineffective assistance would provide cause for a default under *Martinez*, § 2254(e)(2) does not preclude district court from holding hearing on claim); *Detrich*, 740 F.3d at 1247 (en banc) (same; "*Martinez* would be a dead letter if a prisoner's only opportunity to develop the factual record of his state PCR counsel's ineffectiveness had been in state PCR proceedings, where the same ineffective counsel represented him.").[13]

Furthermore, it is well recognized that both discovery and hearings are appropriate in habeas proceedings if necessary to determine the validity of a procedural defense. *See, e.g.*, *Holloway v. Horn*, 355 F.3d 707, 716 (3d Cir. 2004) ("[I]t is within a District Court's authority to grant a hearing on a petitioner's ability to establish cause to excuse a procedural default, and therefore § 2254(e)(2) is inapplicable to those hearings."). Accordingly, Respondent's argument based on § 2254(e)(2) is without merit.

---

[13] Again, a decision in *Shinn* may provide further guidance on these issues.

## CONCLUSION

For the reasons set forth herein and in Petitioner's Motion for Discovery, DE-71,

Petitioner respectfully requests that the Court authorize him to conduct discovery.

Respectfully submitted,

/s/ Shawn Nolan
SHAWN NOLAN
Federal Community Defender Office for
    the Eastern District of Pennsylvania
Capital Habeas Unit
Curtis Center, Suite 545 West
601 Walnut Street
Philadelphia, PA  19106
215-928-0520
Dated:  July 14, 2021          shawn_nolan@fd.org

17

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served the foregoing on the following person by ECF

filing:

Cara Hanna

Assistant Attorney General

Office of the Attorney General of Texas

Post Office Box 12548, Capitol Station

Austin, Texas 78711-2548

*/s/ Shawn Nolan* _____

Shawn Nolan

Dated:   July 14, 2021